UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| CHADWICK ST. LOUIS,<br>    Plaintiff, | :<br>:<br>: |
| v. | :   Case No. 3:19cv320(KAD) |
| DR. JOHNNY WU, ET AL.,<br>    Defendants. | :<br>:<br>: |

## **INITIAL REVIEW ORDER**

**Preliminary Statement**

The plaintiff, Chadwick St. Louis ("St. Louis"), is incarcerated at the Garner Correctional Institution ("Garner"). He initiated this action by filing a civil rights complaint against Commissioner Scott Semple, Medical Director of the Department of Correction Kathleen Maurer ("DOC Medical Director Maurer"), Medical Director of Correctional Managed Health Care Mary Ellen Castro ("CMHC Medical Director Castro"), Correctional Managed Health Care Medical Director Dr. Johnny Wu ("CMHC Medical Director Dr. Wu"), Dr. Valletta, Dr. Syed Johar Naqvi, Dr. Omprakash Pillai, Warden William Mulligan, Warden Anthony Corcella, Deputy Warden Danielle Borges, Physician Assistant Kevin McChrystal ("PA McChrystal") and Medical Staff Members Tawanna Furtick ("Staff Member Furtick") and Cheryl Spano-Lonis ("Staff Member Spano-Lonis"). He claims that the defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment prohibition against cruel and unusual punishment.

On May 21, 2019, St. Louis filed a motion for temporary restraining order and for a preliminary injunction seeking orders that the defendants arrange for a specialist to examine him and for the defendants to provide him with a firm mattress and an egg crate mattress topper. The

court denied the motion for temporary restraining order because St. Louis did not comply with the requirements of Federal Rule of Civil Procedure 65(b) and took the motion for preliminary injunction under advisement. For the reasons set forth below, the complaint will be dismissed in part and the court will order the defendants to respond to the motion for preliminary injunction.

**Standard of Review**

Pursuant to 28 U.S.C. § 1915A(b), the court must review prisoner civil complaints against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *Id.* Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). Although courts still have an obligation to interpret "a *pro se* complaint liberally," the complaint must include sufficient factual allegations to meet the standard of facial plausibility. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

**Allegations**

St. Louis suffers from back problems including "degenerative ventral spurring involving all of the ventral bodies . . . [and] degenerative changes of facet joints at L4-L5 and L5-S1 vertebrae." Compl., ECF No. 1, at 4 ¶ 16. These degenerative changes cause St. Louis extreme pain and discomfort in his hips and lower back. *See id.* ¶ 17. The intensity of the pain is "de[]biliating and at times limit[s] the complete movement and enjoyment of life by St. Louis." *See id.* ¶ 18.

During the time of St. Louis's incarceration, medical staff sometimes prescribed double mattresses, egg crate foam mattress toppers and firm, therapeutic mattresses to inmates who suffered from hip, back, neck or shoulder problems. *See id.* at 7 ¶ 42. In January 2016, St. Louis informed the defendants that he "was experiencing a severe degradation of his medical condition and that on most mornings he struggled to get out of bed." *See id.* ¶ 44. As a result, St. Louis submitted requests for treatment and for health services reviews and filed a state habeas action seeking "relief from the defective mattresses." *See id.* ¶ 46. He also spoke to Staff Members Furtick and Spano-Lonis about his need for a double mattress or for an egg crate mattress topper. *See id.* ¶ 47. They promised to put him on a list to see a physician "to receive [] prescribed treatment," but he was not seen by a physician "in a timely manner." *See id.*

On April 19, 2016, St. Louis met with PA McChrystal at a chronic care clinic. *See id.* at 8 ¶ 48. St. Louis sought relief from his "continually degrading back problems." *See id.* At that time, a policy was in place that prohibited medical staff from prescribing double mattresses or egg crate mattress toppers. *See id.* ¶ 49. CMHC Medical Director Dr. Wu had implemented the policy at "the behest of Semple, Mulligan, Borges, Corcella, Maurer, Castro and other unknown

3

D.O.C. staff." *See id.* PA McChrystal told St. Louis that he could not prescribe a double mattress or mattress topper due to Dr. Wu's policy, but indicated that if the policy were not in place, he would prescribe a double mattress or mattress bed topper for St. Louis. *See id.* ¶ 54.

PA McChrystal refused to submit a request for a double mattress or an egg crate mattress topper to the Utilization Review Committee ("URC"). *See id.* ¶ 49. On May 1, 2016, St. Louis filed a medical grievance seeking additional pain medication and a mattress bed topper. *See id.* ¶ 55 & at 13, Ex. A. On May 25, 2016, PA McChrystal stated that he could not override CMHC policies and that he would take no further action in response to St. Louis's requests. *See id.*

On multiple occasions, St. Louis spoke directly with Drs. Naqvi and Pillai in the MacDougall medical unit or hallway. *See id.* at 9 ¶ 57. They instructed him to submit additional written requests for treatment. *See id.* On July 25, 2017, he submitted written requests for treatment to Drs. Naqvi and Pillai. *See id.* ¶ 58. Neither physician "did anything to address his "degrading medical condition." *See id.*

On February 13, 2018, St. Louis filed a grievance claiming that his mattress had compressed down to a thickness of only one inch. *See id.* ¶ 59 & at 15, Ex. B. He sought a new mattress and an additional mattress or a mattress topper. *See id.* On March 8, 2018, Warden Mulligan denied the request because St. Louis was not due for a replacement mattress until September 2018. *See id.* He instructed St. Louis to contact the medical department if he needed a double mattress or a mattress topper due to his medical condition. *See id.* St. Louis appealed the denial of his grievance, which appeal was denied. *See id.* ¶ 60 & at 17, Ex. C.

In June 2018, the Department of Correction took over management of inmate medical care from Correctional Managed Health Care. *See id.* at 6 ¶ 38. At some point before October

4

16, 2018, St. Louis was transferred to Garner.  *See id.* at 9 ¶ 61.

On October 16, 2018, St. Louis explained to Dr. Valletta that he was experiencing extreme back pain and that it was difficult for him to get out of bed or move and that the mattress that he slept on was the cause of his back pain.  *See id.* at 19, Ex. D.  Dr. Valletta prescribed Naproxen for pain.  *See id.*  On November 21, 2018, St. Louis filed a grievance seeking an MRI of his back, a firm mattress and an egg crate mattress topper.  *See id.*  On November 30, 2018, Dr. Valletta responded to the grievance indicating that x-rays of St. Louis's spine reflected that he suffered from mild facet joint arthritis, he exhibited no neurologic symptoms and his physical exam was normal.  *See id.*  He noted that he had prescribed weight loss and range of motion exercises.   Dr. Valetta concluded that no change in St. Louis's treatment was necessary.  *See id.* at 9 ¶ 62.

On November 29, 2018, St. Louis "reported his condition to [Deputy Warden] Borges." *See id.* ¶ 63.  She "failed or refused to do anything for" St. Louis.  *See id.*

**Discussion**

St. Louis alleges that the defendants have denied him medical care in violation of the Eighth Amendment and in violation of Article First § 9 of the Connecticut Constitution.  He also claims that the defendants have discriminated against him in violation of the Equal Protection Clause of the Fourteenth Amendment and Article First §§ 1, 20 of the Connecticut Constitution.

**Eleventh Amendment**

St. Louis sues all defendants in their individual capacities and Warden Mulligan and Commissioner Semple in their individual **and official** capacities.  For relief, he seeks compensatory and punitive damages and declaratory and injunctive relief.

5

The Eleventh Amendment to the United States Constitution bars claims for monetary damages against a state actor acting in his official capacity unless there is a waiver of this immunity by statute or the state consents to suit. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). There are no allegations that the State of Connecticut has consented to suit for claims brought against defendants Semple or Mulligan under section 1983. Furthermore, section 1983 was not intended to override a state's sovereign immunity. *See Quern v. Jordan*, 440 U.S. 332, 342 (1979) (Section 1983 does not override a state's Eleventh Amendment immunity). Thus, to the extent that St. Louis seeks money damages from defendants Mulligan and Semple in their official capacities, the request is barred by the Eleventh Amendment. Accordingly, the claims for monetary damages against Commissioner Semple and Warden Mulligan in their official capacities are dismissed. *See* 28 U.S.C. § 1915A(b)(2).

**Fourteenth Amendment -Equal Protection Clause**

In the description of his legal claims, St. Louis states that the "provision of medical treatment, care and benefits to other inmates that are denied to [him], with callous disregard for his medical condition, constitutes [] a denial of equal protection in violation of the Fourteenth Amendment. . . ." Compl. at 9 ¶ 65. The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. This Clause does not mandate identical treatment for each individual or group of individuals. Instead, it requires that similarly situated persons be treated the same. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439-40 (1985).

To state an equal protection claim, a plaintiff must allege that: (1) he was treated differently from similarly situated individuals and (2) that the difference in or discriminatory treatment was based on "'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980). Alternatively, an equal protection claim can sometimes be sustained even if the plaintiff does not allege "class-based" discrimination, but instead claims that he has been irrationally singled out as a "class of one." *Engquist v. Or. Dep't of Agric.,* 553 U.S. 591, 601 (2008). To state a claim under the class of one theory, a plaintiff "must show 'an extremely high degree of similarity between themselves and the persons to whom they compare themselves.'" *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) (quoting *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006)).

St. Louis does not allege that the defendants treated him differently because of his membership in a protected class or based on any other impermissible characteristic. Instead, he contends that double mattresses have been provided to other inmates based on medical prescriptions, but not to him. He does not provide any detail or description of those inmates or the nature and severity of their conditions or explanation for why the prescriptions for double mattresses were medically necessary. Accordingly St. Louis has not identified any similarly situated inmates who were treated differently from him or alleged sufficient facts to show the necessary degree of similarity to other inmates to state a class of one equal protection claim. *See Ruston*, 610 F.3d at 59 (affirming dismissal of equal protection claim on ground that mere allegation of less favorable treatment than "similarly situated" persons failed to state plausible

7

"class of one" equal protection claim) (citation omitted); *Riley v. Roycroft*, No. 16 CV 2227 (VB), 2017 WL 782917, at *8 (S.D.N.Y. Feb. 28, 2017) (conclusory allegation that inmate was denied medical care that was provided to other "inmates with the same medical condition" did not state viable equal protection claim, because inmate "fail[ed] to allege facts that demonstrate[d] a substantial similarity between himself and the other inmates with whom he compare[d] himself"). St. Louis has not asserted a plausible equal protection claim against the defendants and the claim is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

**Eighth Amendment – Deliberate Indifference**

St. Louis alleges that the defendants have denied him effective medical care to relieve his pain from a degenerative spinal condition. He asserts that the denial of a double mattress or an egg crate mattress topper "based on an arbitrary policy" rather than on the basis of his need constitutes deliberate indifference to his serious medical needs.

To state a claim for deliberate indifference to a serious medical need, a plaintiff must first demonstrate that his or her medical need was "sufficiently serious." *Salahuddin v Goord*, 467 F.3d 263, 279 (2d Cir. 2011). Factors relevant to the seriousness of a medical condition include whether "a reasonable doctor or patient would find [it] important and worthy of comment," whether the condition "significantly affects an individual's daily activities," and whether it causes "chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citations omitted).

The Plaintiff must also establish a sufficiently culpable state of mind on the part of the defendants. *See Salahuddin*, 467 F.3d at 279-80. A Plaintiff must demonstrate that the defendant was actually aware of a substantial risk that the inmate would suffer serious harm as a result of

8

his or her actions or inactions. *Id.* Mere negligent conduct does constitute deliberate indifference. *See id.* at 280 ("[R]ecklessness entails more than mere negligence; the risk of harm must be substantial and the official's actions more than merely negligent."); *Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir. 2003) (medical malpractice alone does not amount to deliberate indifference).

St. Louis alleges that he suffers from a chronically and severely painful spinal condition. The court concludes that St. Louis has alleged a sufficiently serious medical need. *See Guarneri v. Hazzard*, No. 9:06-CV-0985, 2008 WL 552872, at *1 (N.D.N.Y. Feb. 27, 2008) ("[s]evere back pain, especially if lasting an extended period of time, can amount to a serious medical need under the Eighth Amendment"); *Faraday v, Lantz*, No. 3:03CV1520(SRU), 2005 WL 3465846, at *5 (D. Conn. Dec. 12, 2005) (lower back pain caused by herniated discs and sciatica constitute a serious medical need). As to whether the named defendants are alleged to have had a sufficiently culpable state of mind, as required under the law, the court considers each defendant separately.

### PA McChrystal

St. Louis alleges that as of April 19, 2019, although PA McChrystal concluded that a double mattress or an egg crate mattress topper was medically necessary to alleviate St. Louis' back pain, he did not prescribe either due to Dr. Wu's policy. St. Louis asserts that PA McChrystal should have requested an exception to the policy from the URC. Construing the allegations to make the strongest arguments they suggest, St. Louis has asserted sufficient facts to state a plausible claim Eighth Amendment claim against PA McChrystal. Accordingly, the

9

court will permit the Eighth Amendment deliberate indifference to medical needs claim to proceed against PA McChrystal in his individual capacity.

### Drs. Naqvi and Pillai

St. Louis alleges that at different times after April 19, 2016, he spoke to Drs. Naqvi and Pillai regarding his need for medical treatment and they suggested that he submit written requests for treatment. On July 25, 2017, St. Louis sent written requests addressed to Naqvi and Pillai. He contends that neither physician addressed his serious medical condition. At this stage of the proceedings, the court will assume that Drs. Naqvi and Pillai received St. Louis's request for treatment for his painful back condition and failed to offer him any treatment. The court will permit this Eighth Amendment deliberate indifference to medical needs claim to proceed against Drs. Naqvi and Pillai in their individual capacities.

### Medical Staff Members Furtick and Spano-Lonis

St. Louis alleges that on one occasion he spoke to Staff Members Furtick and Spano-Lonis and requested that he be provided with a double mattress or an egg crate mattress topper. They informed St. Louis that he would be placed on a list to see a physician. St. Louis alleges that he was not thereafter seen by a physician in a timely manner. These allegations do not state a plausible Eighth Amendment claim against Staff Members Furtick and Spano-Lonis and those claims are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### Dr. Valletta

St. Louis saw Dr. Valletta on October 16, 2018 and complained to him that he was having difficulty moving around and getting out of bed in the morning. Dr. Valletta prescribed medication to treat St. Louis's painful back and instructed him to lose weight and to engage in

certain exercises. St. Louis filed a grievance against Dr. Valletta seeking an MRI and a double mattress or mattress topper. Dr. Valletta responded to the grievance indicating that St. Louis's medical condition did not require a special mattress or mattress topper and that he had prescribed exercises and weight loss to alleviate St. Louis's symptoms. These allegations do not state a claim of deliberate indifference to St. Louis's medical needs. A disagreement as to the appropriate treatment does not state a claim under the Eighth Amendment. *See Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011) ("It has long been the rule that a prisoner does not have the right to choose his medical treatment as long as he receives adequate treatment. . . . [T]he essential test is one of medical necessity and not one simply of desirability.") (internal quotation marks and citations omitted); *Chance*, 143 F.3d at 703 ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim."). The claim of deliberate indifference against Dr. Valletta is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

**Warden Corcella and Deputy Warden Borges**

Anthony Corcella is the Warden at Garner. Danielle Borges is the Deputy Warden at Garner to which St. Louis was transferred at some point prior to October 2018. There are no allegations that St. Louis sought medical treatment from Warden Corcella or made Warden Corcella aware of his need for medical treatment after his transfer to Garner in 2018. Thus, St. Louis has not alleged that Warden Corcella was deliberately indifferent to his medical needs and that claim is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

St. Louis alleges that he "reported his condition" to Deputy Warden Borges on November 29, 2018, but she failed to "do anything" for him. Deputy Warden Borges is not a medical provider. Furthermore, on November 30, 2018, Dr. Valletta responded to St. Louis's medical

11

grievance. Based on Dr. Valletta's response, it is evident that he had provided treatment to St. Louis for his complaints of back pain. Thus, the allegation that Deputy Warden Borges, who is not a medical provider, did not take any action in response to St. Louis's "report" regarding his medical condition, fails to state a claim of deliberate indifference to a medical need under the Eighth Amendment and that claim is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### Warden Mulligan

St. Louis contacted Warden Mulligan in February 2018 claiming that his mattress had compressed down to a thickness of one inch and that he was experiencing back pain due to the thin mattress. Warden Mulligan denied the request for a new mattress based on the Department of Correction's policy that replacement mattresses are only provided to inmates once a year. Warden Mulligan told St. Louis to contact the medical department if he required a new mattress or mattress topper due to a medical condition. St. Louis does not allege that Warden Mulligan was aware of his medical diagnosis or cause of his back pain or that continuing to use his existing mattress posed a substantial risk of exacerbating his condition. These allegations do not state a claim that Warden Mulligan was deliberately indifferent to a serious medical need. *See DeAngelis v. Farinella*, No. 3:16-CV-307 (MPS), 2017 WL 4683996, at *9–11 (D. Conn. Oct. 18, 2017) ("Absent a medical order for a double mattress, Captain Shabenas was not deliberately indifferent to the plaintiff's medical needs for failing to provide one.") (citing *Abreu v. Schriro*, No. 1:14-cv-6418-GHW, 2016 WL 3647958, at *3–4 (S.D.N.Y. July 1, 2016) (correctional staff not deliberately indifferent to prisoner's serious medical needs for denying double mattresses where double mattresses not permitted in facility and prisoner had no doctor order to receive one)). The Eighth Amendment claim against Warden Mulligan is dismissed. *See* 28 U.S.C. §

1915A(b)(1).

### Medical Directors Castro, Maurer and Dr. Wu, Commissioner Semple, Wardens Mulligan and Corcella and Deputy Warden Borges

St. Louis alleges that as of April 2016, Dr. Wu, at the direction of Commissioner Semple, DOC Medical Director Maurer, CMHC Medical Director Castro, Wardens Mulligan and Corcella and Deputy Warden Borges, had implemented a policy prohibiting medical providers in Department of Correction facilities from prescribing double mattresses or egg crate mattress toppers to inmates. Pursuant to that policy, on April 19, 2016, PA McChrystal refused to prescribe St. Louis a double mattress or mattress topper even though he believed that such a prescription was medically necessary. St. Louis contends that this policy was arbitrary and resulted in deliberate indifference to his serious medical need.

A prison regulation or policy may permissibly infringe on an inmate's constitutional rights if it is "reasonably related to legitimate penological interests." *Turner v. Safley,* 482 U.S. 78, 89 (1987). In determining the reasonableness of a prison policy or regulation, the court considers four factors:

> "(i) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (ii) whether there are alternative means of exercising the right in question that remain open to prison inmates; (iii) whether accommodation of the asserted constitutional right will have an unreasonable impact upon guards and other inmates, and upon the allocation of prison resources generally; and (iv) whether there are reasonable alternatives available to the prison authorities."

*Covino v. Patrissi*, 967 F.2d 73, 78-79 (2d Cir. 1992) (citing *Turner,* 482 U.S. at 89–90). The court cannot evaluate these factors without additional information. Accordingly, this Eighth Amendment challenge to the mattress policy implemented by CHMC Medical Director Dr. Wu at the direction of Commissioner Semple, DOC Medical Director Maurer, CMHC Medical

Director Castro, Wardens Mulligan and Corcella and Deputy Warden Borges will proceed to enable St. Louis to further develop the record.

**Claims under the Connecticut Constitution**

In addition to his federal constitutional claims, St. Louis contends that the defendants violated his rights under Article First §§ 1, 9 and 20 of the Connecticut Constitution. Article First, § 1 of the Connecticut Constitution provides: "[a]ll men when they form a social compact, are equal in rights; and no man or set of men are entitled to exclusive public emoluments or privileges from the community." Conn. Const. art. 1, § 1. Article 9 provides: "No person shall be arrested, detained or punished, except in cases clearly warranted by law." Conn. Const. art. 1, § 9. Article First § 20 provides that "No person shall be denied equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his or her civil or political rights because of religion, race, color, ancestry, national origin, sex or physical or mental disability." Conn. Const. art. 1 § 20.

In *Binnette v. Sabo*, 244 Conn. 23, 41-47, 710 A.2d 688, 693-99 (1998), the Connecticut Supreme Court relying on *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), recognized a private cause of action for monetary damages against municipal police officers for violations of Article First, §§ 7 and 9 of the Connecticut Constitution where the claims arose out of an alleged unreasonable search and seizure and unlawful arrest of the plaintiff. In reaching its decision, the Connecticut Supreme Court "emphasize[d] that [its] decision to recognize a *Bivens*-type remedy in this case does not mean that a constitutional cause of action exists for every violation of our state constitution." *Id.* at 47, 710 A.2d at 700.

### Article First Sections One and Twenty

The Connecticut Superior Courts have repeatedly declined to recognize a private right of action under Article First §§ 1 and 20 of the Connecticut Constitution. *See, e.g., Minto v. Dep't of Mental Health & Addiction Servs.*, No. HHDCV176076730S, 2018 WL 710124, at *9 (Conn. Super. Ct. Jan. 11, 2018) ("Connecticut courts have unanimously declined to recognize a private cause of action under article first, § 20"); *Doe v. Crowley v. Town of Enfield*, No. 3:14 cv 01903 (MPS), 2015 WL 4162435, at *3 (D. Conn. July 9, 2015) (declining to recognize a private right of action under Article First, §§ 8 and 20); *Traylor v. Hammond*, 94 F. Supp. 3d 203, 222 (D. Conn. 2015) ("Given that Traylor raises novel and undeveloped issues of state law, and out of the deference owed to the State as the final arbiter of its own Constitution, the court, in its discretion, declines to exercise supplemental jurisdiction over the claims against Keating and New London under [Article. First, §§ 1, 20 of] the Connecticut Constitution."). Accordingly, the court declines to exercise supplemental jurisdiction over claims brought pursuant to Article First, Sections 1 and 20 of the Connecticut Constitution insofar as those claims raise new and undeveloped issues under state law. *See* 28 U.S.C. § 1367(c)(1) ("The district courts may decline to exercise supplemental jurisdiction over a claim" that "raised a novel or complex issue of State Law....").

### Article First § 9

St. Louis contends that the defendants deprived him of adequate medical treatment for his serious medical need in violation of the punishment clause of Article First § 9 of the Connecticut Constitution. The court will exercise supplemental jurisdiction over this claim because it arises out of the same set of facts as the Eighth Amendment claims that are proceeding against

15

defendants Drs. Naqvi and Pillai and PA McChrystal. *See* 28 U.S.C. § 1367(a).

**ORDERS**

The court enters the following orders:

**(1)** The claim for monetary damages against Warden Mulligan and Commissioner Semple in their official capacities are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(2). The Eighth Amendment claim of deliberate indifference to medical needs against Staff Members Furtick and Spano-Lonis and Dr. Valetta are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1). The Eighth Amendment claim that Warden Mulligan was deliberately indifferent to St. Louis medical needs in March 2018 is **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1). The Eighth Amendment claim that Warden Corcella was deliberately indifferent to St. Louis's medical needs during his confinement at Garner in 2018 and the Eighth Amendment claim that Deputy Warden Borges was deliberately indifferent to St. Louis's medical needs during his confinement at Garner in November 2018 are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1).

The Eighth Amendment claim of deliberate indifference to St. Louis's medical needs in April and May 2016 will proceed against PA McChrystal in his individual capacity. The Eighth Amendment claim of deliberate indifference to St. Louis's medical needs in July 2017 will proceed against Drs. Naqvi and Pillai in their individual capacities. The Eighth Amendment challenge to the mattress policy prohibiting medical providers in Department of Correction facilities from prescribing double mattresses or mattress toppers as of April 2016 will proceed against CHMC Medical Director Dr. Wu, DOC Medical Director Maurer, CMHC Medical Director Castro, Warden Corcella and Deputy Warden Borges in their individual capacities and against Warden Mulligan and Commissioner Semple in their individual and official capacities.

The court declines to exercise supplemental jurisdiction over the claims asserted under Article First, §§ 1 and 20 of the Connecticut Constitution, but will exercise supplemental jurisdiction over the claim asserted under Article First, § 9 of the Connecticut Constitution. *See* 28 U.S.C. § 1367(a) and (c).

**(2)** Upon review of the motion for preliminary injunction, the court concludes that a response to the motion is required by the defendants. **Accordingly, the Clerk is directed to forward a copy of the motion for preliminary injunction, [ECF No. 6], to Assistant Attorney General Terrence M. O'Neill at the following email address: terrence.oneill@ct.gov and to Assistant Attorney General Madeline A. Melchionne at the following email address: madeline.melchionne@ct.gov, as the representatives of Warden Mulligan and Commissioner Semple in their official capacities. Defendants Mulligan and Semple shall file a response to the motion within twenty (20) days of the date of this order.**

**(3)** **Within twenty-one (21) days of this Order**, the Clerk shall prepare a summons form and send an official capacity service packet to the U.S. Marshal's Service. The U.S. Marshals Service shall serve the summons, a copy of the complaint and this order on Warden Mulligan and Commissioner Semple in their official capacities by delivering the necessary documents in person to the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141.

**(4)** **Within twenty-one (21) days of this Order**, the Clerk shall ascertain from the Department of Correction Office of Legal Affairs the current work addresses for Commissioner Scott Semple, Medical Director of the Department of Correction Kathleen Maurer, Medical Director of Correctional Managed Health Care Mary Ellen Castro, Correctional Managed Health Care Medical Director Dr. Johnny Wu, Dr. Syed Naqvi, Dr. Omprakash Pillai, Warden William

Mulligan, Warden Anthony Corcella, Deputy Warden Danielle Borges and Physician Assistant Kevin McChrystal and mail a copy of the complaint, this order and a waiver of service of process request packet to each defendant in his or her individual capacity at his or her current work address. On the thirty-fifth (35th) day after mailing, the Clerk shall report to the court on the status of each request. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

**(5)** Defendants Semple, Mulligan, Wu, Maurer, Castro, Corcella, Borges and McChrystal shall file their response to the complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If the defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

**(6)** Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within six months (180 days) from the date of this order. Discovery requests need not be filed with the court.

**(7)** All motions for summary judgment shall be filed within seven months (210 days) from the date of this order.

**(8)** **The Clerk shall** send a courtesy copy of the complaint and this order to the Connecticut Attorney General and to the Department of Correction Legal Affairs Unit.

(9) The Clerk shall file the Standing Order on Discovery Protocols.

SO ORDERED at Bridgeport, Connecticut this 4th day of June, 2019.

            /s/ Kari A. Dooley
           Kari A. Dooley
           United States District Judge