UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| CHADWICK ST. LOUIS,<br>    Plaintiff, | :<br>:<br>: |
| v. | :    Case No. 3:19cv320(KAD) |
| DR. JOHNNY WU, ET AL.,<br>    Defendants. | :<br>:<br>: |

## **RULING ON PENDING MOTIONS**

**Procedural Background**

The plaintiff, Chadwick St. Louis ("St. Louis"), currently incarcerated at the Garner Correctional Institution ("Garner") brings this civil rights action against certain employees of Correctional Managed Health Care ("CMHC") as well as medical staff members from Garner and MacDougall-Walker Correctional Institution ("MacDougall-Walker"). He alleges, *inter alia*, that the Defendants were deliberately indifferent to his medical needs and/or they promulgated or enforced an unconstitutional policy prohibiting medical providers in Department of Correction facilities from prescribing double mattresses or mattress toppers. *See* IRO, ECF No. 8 at 15-17.

Pending before the court is St. Louis's motion for a preliminary injunction[1] in which he seeks an order directing the defendants to provide him with a special mattress and mattress topper and to send him to a medical specialist for an evaluation. Also pending is his motion seeking a video conference in connection with the motion for preliminary injunction. The

---

[1] On May 21, 2019, the court denied that portion of the motion which sought a temporary restraining order because the motion did not comply with the requirements of Federal Rule of Civil Procedure 65(b). The court took the motion for preliminary injunction under advisement. *See* Order, ECF No. 7.

defendants filed an opposition to the motion for preliminary injunction. For the reasons set forth below, the motion for preliminary injunction and the motion for video conference will be denied.

**Standard of Review**

An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010) (citation omitted). To warrant preliminary injunctive relief, the moving party must demonstrate (a) that he or she will suffer "irreparable harm" in the absence of an injunction, and (b) either (1) a "likelihood of success on the merits or (2) sufficiently serious questions going to the merits [of the case] to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting preliminary injunctive relief." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 405-06 (2d Cir. 2011) (internal quotation marks omitted). If the movant seeks a "mandatory preliminary injunction that alters the status quo by commanding some positive act," rather than a "prohibitory injunction seeking only to maintain the status quo" then the burden of proof is even higher. *Id.* at 406 (internal quotation marks and citation omitted). A mandatory injunction "should issue only upon a *clear showing* that the moving party is entitled to the relief requested, or where *extreme* or *very serious* damage will result from a denial of preliminary relief." *Id.*

"'[T]here is no hard and fast rule in this circuit that oral testimony must be taken on a motion for a preliminary injunction or that the court can in no circumstances dispose of the motion on the papers before it.'" *Riddick v. Maurer*, 730 F. App'x 34, 38 (2d Cir. 2018) (quoting *Md. Cas. Co. v. Realty Advisory Bd. on Labor Relations*, 107 F.3d 979, 984 (2d Cir. 1997)). A hearing is not necessary to decide a preliminary injunction "when the relevant facts either are not in dispute or have been clearly demonstrated at prior stages of the case, or when the disputed

2

facts are amenable to complete resolution on a paper record." *Charette v. Town of Oyster Bay*, 159 F.3d 749, 755 (2d Cir. 1998). Upon review of the record and the parties' submissions, the court determines that oral testimony and argument are not necessary in this case. Thus, the motion seeking a video conference for that purpose is denied.

**Discussion**

In support of his motion seeking injunctive relief, St. Louis alleges that he suffers from "extreme back pain" which is exacerbated by the mattress that he is forced to sleep on. Decl. Supp. Mot. Prelim. Inj., ECF No. 6, at 4 ¶¶ 1-2. He claims that his current mattress is compressed to a depth of less than one inch and is not designed for an inmate who weighs as much as he weighs. *Id.* at 5 ¶¶ 5, 7. St. Louis alleges that medical providers at Garner have denied his requests for an MRI of his back and an examination by a specialist. *Id.* at 4 ¶ 3. In December 2018, he requested that he be provided with a firm mattress and an egg crate mattress topper. *Id.* ¶ 4. On January 28, 2019, a district administrator denied the request. *Id.* at 11.

St. Louis seeks mandatory injunctive relief in the form of court orders directing the defendants to: (1) arrange to have him examined by a "back specialist," (2) carry out the plan of treatment prescribed by the specialist for his condition, and (3) provide him with a firm mattress and an egg crate mattress topper for "a bit more comfort." *Id.* at 5 ¶ 9. Given that St. Louis is currently confined at Garner and CMHC no longer has a contract with the Department of Correction to provide medical care to inmates, the court construes the motion as seeking relief from defendants Corcella and Borges, who are the warden and deputy warden at Garner and defendant Valletta, who is a physician working at Garner.

Dr. Valletta filed a declaration in opposition to the requests for injunctive relief as well as

copies of St. Louis's medical records covering the period January through June 2019. *See* Defs'
Obj. to Mot. Prelim. Inj., ECF No. 20; Ex. A (Medical Records), ECF No. 32. St. Louis has filed
a reply to the defendants' objection and copies of some of his medical records. *See* Reply Obj.
Mot. Prelim. Inj., ECF No. 28.

The Defendants contend that St. Louis has received medical care for his complaints about
back pain and that he is not at risk of suffering irreparable harm if the relief sought is not granted
to him. St. Louis's medical records reflect that on October 16, 2018, Dr. Valletta prescribed
Naproxen to be taken by him twice a day to treat his back pain. *See* Reply Obj. Mot. Prelim. Inj,
at 10. On November 21, 2018, St. Louis submitted a request for health services review
complaining of back pain and requesting an MRI of his back, a firm mattress and an egg crate
mattress topper. Valletta Decl. ¶ 11, ECF No. 20-1, at 3; Compl., Ex. D, ECF No. 1, at 19. In
response, Dr. Valletta indicated that an x-ray of St. Louis's lumbar spine reflected that he
suffered from mild facet joint arthritis. *Id.* ¶ 12. Dr. Valletta noted that St. Louis had exhibited
no neurological symptoms or abnormalities that might warrant an MRI or a new mattress. *Id.*
Dr. Valletta concluded that St. Louis's condition did not require that he undergo an MRI or that
he be prescribed a medical mattress and recommended that St. Louis lose weight and perform
range of motion exercises. *Id.* ¶ 13.

At the end of January 2019, St. Louis reported to a nurse that he was experiencing back
pain and pain in the area of his ribs on the right side and that the two medications that had been
prescribed to alleviate his painful symptoms were only minimally effective. Ex. A, Medical
Records, ECF No. 32, at 234-37. The nurse referred St. Louis to be seen by a physician. *Id.* at
237. On February 19, 2019, Dr. Valetta examined St. Louis during a chronic care appointment.

4

Valletta Decl. ¶ 14. During the appointment, St. Louis complained that he was experiencing severe pain in the area of his right ribs. Ex. A, Medical Records, at 207-08, 211. St. Louis did not voice any complaints about back pain or request a new mattress. Valletta Decl. ¶ 16. X-rays of St. Louis's right ribs were normal. Ex. A, Medical Records, at 205, 212. Dr. Valletta prescribed a muscle relaxant to treat St. Louis's rib pain. *Id.* Dr. Valletta noted an unspecified lump lower in the inner quadrant of St. Louis's right chest and indicated that he would submit a request to the Utilization Review Board to refer St. Louis for a test or procedure to evaluate the lump. *Id.* at 213.

On March 24, 2019, St. Louis reported to a nurse that that he was experiencing back pain and had a mass in the right anterior area of his ribs. *Id.* at 169. The nurse noted that St. Louis was in no acute distress and was able to sit, stand and walk without difficulty. *Id.* The nurse referred him to be seen by a physician. *Id.* at 171.

On May 28, 2019, Dr. Valletta treated St. Louis in the infirmary at Garner because he was suffering from low blood pressure, had not eaten for several days and had suffered an apparent seizure in his cell on May 27, 2019. Valletta Decl. ¶¶ 22-23; Ex. A, Medical Records, at 102-14. St. Louis told Dr. Valletta that was on a hunger strike and that he had refused his seizure medication for a number of days prior to his apparent seizure on May 27, 2019. Ex. A, Medical Records, at 89-93. St. Louis did not complain of back pain or seek a new mattress. Valletta Decl. ¶ 24. Dr. Valletta directed medical staff members to continue to monitor St. Louis's blood pressure, discontinued some of St. Louis's medications that were contraindicated due to his low blood pressure and counseled him on his hunger strike and decision to refuse his seizure medication. Ex. A, Medical Records, at 92. On June 5, 2019, Dr. Valletta discharged St.

Louis from the infirmary. *Id.* at 28. On July 17, 2019, a physician prescribed a lidocaine patch and Cymbalta to treat St. Louis's back pain. *See* Reply Obj. Mot. Prelim. Inj., ECF No. 28, at 3.

Dr. Valletta opines that there are no objective findings in St. Louis's medical records to justify an order for an MRI. He further opines that the mild joint arthritis present in St. Louis's lumbar spine is not and has not been exacerbated by St. Louis' mattress. Valletta Decl. ¶¶ 26-28. Rather, he asserts, weight loss and range of motion exercises should effectively reduce St. Louis' back pain. *Id.* ¶¶ 29-30.

The court accepts that St. Louis sincerely believes that the mattress he was using at the time he filed his motion was the cause of his back pain or exacerbated his back pain. However, aside from his sincerely held belief, there is no evidence that his mattress, in fact, is the cause of his back pain. And no medical provider has concluded that his mild joint arthritis or his complaints of pain require a prescription for a specific type of mattress. Furthermore, medical staff members at Garner, including Dr. Valletta, have not ignored St. Louis's complaints of back pain. Rather, they have prescribed medications, exercises and a lidocaine patch and have recommended that St. Louis lose weight to relieve the pain in his back.

Accordingly, St. Louis has not demonstrated either that he will suffer actual, imminent or irreparable harm if his injunctive relief is not granted, or that he is likely to succeed on the merits of his deliberate indifference claims. Accordingly, the motion for preliminary injunction is denied.

**Conclusion**

The Motion for Video Conference, [**ECF No. 22**] and the Motion for a Preliminary Injunction, [**ECF No. 6**], are **DENIED**.

6

SO ORDERED at Bridgeport, Connecticut this 21st day of November, 2019.

                                                          __/s/_____
                                                          Kari A. Dooley
                                                          United States District Judge